UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> BARRA BRAVA 290 SPORTS & GRILL LLC, *et al.,* <br><br> Defendants. | CASE NO.: 4:25-cv-03756 |

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
<u>**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**</u>

**TABLE OF CONTENTS**

A.  NATURE AND STAGE OF THE PROCEEDING.................................................................. 4

B.  EVIDENCE.................................................................................................................... 5

C.  SUMMARY OF THE ARGUMENT .................................................................................. 5

D.  STATEMENT OF THE ISSUES........................................................................................ 7

E.  STATEMENT OF FACTS ................................................................................................ 7

F.  ARGUMENTS & AUTHORITIES .................................................................................... 9

   1.  THE FCA ................................................................................................................ 10

   2.  INDIVIDUAL LIABILITY ........................................................................................... 11

   3.  STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ............................ 12

   4.  DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)...................... 16

G.  ATTORNEY'S FEES AND COSTS ................................................................................ 18

H.  CONCLUSION ............................................................................................................. 19

I.  PRAYER ....................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986) ............................................................................................................... 14

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) .......... 14

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ..................................................................................................................... 12, 18

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ..................................................................................................................... 14, 18

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).......................... 12, 13

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).................................................... 11

*G&G Closed Circuit Events, LLC v. Alamo Card House, LLC*, 2021 WL 5810558, at *5 (W.D. Tex. Dec. 7, 2021) ............................................................................................................11

*G&G Closed Circuit Events, LLC v. Marroko Live, LLC*, No. 4:20-cv-03184, 2023 WL 11983896, at *5-6 (Findings of Fact and Conclusions of Law) (S.D. Tex. January 30, 2023)11

*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.,* 11 F. Supp. 3d 747, 753-54 (S.D. Tex. 2014)7, 11

*Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773, 2012 WL 950157 * 2  (S.D. Tex. March 19, 2012) (Memorandum and Order) (Atlas, J.)............................................................... 10

*Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Fox, Mag. J.) ................................................................................................. 16

*Joe Hand Promotions, Inc. v. Texas 411 Corporation*, No. 4:11-cv-02883, ECF No. 31 at 4, 8-9 (S.D. Tex. December 13, 2012) ............................................................................................................11

*Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)...... 10

*J&J Sports Productions, Inc. v. Salinas*, No. 4:17-cv-02100, ECF No. 22 (S.D. Tex. December 4, 2018) ............................................................................................................11

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001).. 17

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)................. 10

*KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.)................................................................................ 17

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981).. 12, 18

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978) .......... 12

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985).................................................... 16

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986)............. 15

*Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)... 10

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) ................................................ 16

*U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) ................................................................... 9

**Statutes**

17 U.S.C. § 101, *et seq.*................................................................................................................ 13, 14

47 U.S.C. § 553................................................................................................................... 4, 9, 10

47 U.S.C. § 605............................................................................................................. 4, 6, 9, 10, 11

47 U.S.C. § 605(e)(3)(B)(iii) ....................................................................................................... 7, 18

47 U.S.C. § 605(e)(3)(C)(i)(II)............................................................................................... 1, 7, 12, 19

47 U.S.C. § 605(e)(3)(C)(ii**)** ............................................................................................... 1, 6, 7, 16, 18, 19

47 U.S.C. § 605(e)(4).......................................................................................................................... 9

Federal Communications Act of 1934 .................................................... 1, 4, 6, 7, 9, 11, 12, 13, 19

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff" or "JHP") moves for final default judgment against Defendants, Barra Brava 290 Sports & Grill LLC, d/b/a Barra Brava 290 Sports & Grill, and Alex R. Martinez (collectively, "Defendants") and files its Motion for Final Default Judgment and Supporting Brief ("Motion"), which is supported by the following brief and the attached evidence.

### A. NATURE AND STAGE OF THE PROCEEDING

1. On August 11, 2025, Plaintiff sued Defendants complaining of the unauthorized interception and/or receipt and exhibition of the live pay-per-view broadcast of the *Canelo Alvarez vs. Gennady "GGG" Golovkin III* boxing match, including all undercard bouts and commentary, telecast on September 17, 2022 (the "Program") at their commercial establishment known as Barra Brava 290 Sports & Grill located at 825 Austin St., Suite 813, Hempstead, Texas 77445 ("Establishment"), without paying the commercial sublicense fees to Plaintiff. *See* Dkt. #1.

2. On October 1, 2025, the Deputy Clerk entered default against Defendants. *See* Dkt. #11.

3. JHP seeks the entry of a final default judgment against Defendants for statutory damages under the Federal Communications Act of 1934, as amended (the "FCA"). In its Complaint, Plaintiff asserted piracy claims under the FCA, 47 U.S.C. 605 *et seq.* or, alternatively, 47 U.S.C. § 553, *et seq.* In this Motion, Plaintiff moves for default judgment solely under Title 47 U.S.C. § 605.

### B. EVIDENCE

4. In addition to the admitted-through-default allegations in Plaintiff's Complaint [Dkt. #1], Plaintiff files its Appendix in Support of Plaintiff, Joe Hand Promotions, Inc.'s Motion for Final Default Judgment and Supporting Brief ("App.") containing Exhibit ("Ex.") A, Ex. B, Ex. B(1)-B(3), Ex. C, Ex. C(1)-C(2), Ex. D, and Ex. D(1), which exhibits are incorporated by reference. Citations are referencing exhibits attached to the App.

### C. SUMMARY OF THE ARGUMENT

5. Plaintiff is a commercial licensor of sports and entertainment programming to commercial establishments. *See* Dkt. #1 at ¶ 3, Ex. B at ¶ 4, App. Pg. 16, and Ex. B(1), App. Pg. 22. Plaintiff was granted an exclusive right to distribute and authorize the display of the broadcast of the Program to commercial businesses such as the business made the basis of this case. *Id.* Plaintiff entered into agreements with commercial establishments allowing them to legally exhibit the Program to patrons in their establishments. *See* Dkt. #1 at ¶ 8, Ex. B at ¶¶ 4, 8, App. Pgs. 16-17, Ex. B(1), App. Pg. 22, and Ex. B(2), App. Pg. 23.

6. On the date of the Program, Defendant, Barra Brava 290 Sports & Grill LLC (the "LLC") conducted business as Barra Brava 290 Sports & Grill and owned, operated, maintained, and controlled the Establishment. *See* Dkt. #1 at ¶ 4 and Ex. A, App. Pgs. 4-14. On the date of the Program, Defendant, Alex R. Martinez ("Martinez") operated, maintained and controlled the Establishment, was a member, manager, officer, and/or principal of the entity owning and operating the Establishment, owned the entity owning the operating the Establishment, and had a right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment. *See* Dkt. #1 at ¶ 5 and Ex. A, App. Pgs. 4-10.

7. Rather than purchase the proper commercial rights to the Program from Plaintiff, the Program was illegally intercepted and/or received and exhibited in Defendants' Establishment without authorization from or payment to Plaintiff. *See* Dkt. #1 at ¶¶ 9-14, Ex. B at ¶¶ 4, 8-10, 13-14, App. Pgs. 16-19, Ex. B(1), App. Pg. 22, Ex. B(2), App. Pg. 23, and Ex. B(3), App. Pgs. 24-28, Ex. C at ¶¶ 3-4, App. Pgs. 29-30, Ex. C(1), App. Pg. 31, and Ex. C(2), App. Pg. 35 (limiting use of DAZN material to non-commercial, private viewing purposes only). Defendants' actions constitute a violation of the FCA.

8. Defendants' violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain by **charging a cover charge** and **offering drinks and/or food for sale** during the broadcast of the Program. *See* Dkt. #1 at ¶¶ 12-13, Ex. A, App. Pgs. 4-14, Ex. B at ¶¶ 8-13, App Pgs. 17-19, and Ex. B(3), App. Pgs. 24-28, Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31. Further, the broadcast of the Program at the Establishment was advertised on social media advertising the $20 cover charge to view the Program. *See* Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

9. In this Motion, Plaintiff seeks the entry of a final default judgment against Defendants, jointly and severally, including: (a) damages provided by Title 47 U.S.C. § 605 *et seq.* in the amount of $60,000.00, (b) costs, attorney's fees and expenses, and (c) such other and further relief to which Plaintiff is entitled.

## D.  STATEMENT OF THE ISSUES

- Whether Defendants violated Title 47 U.S.C. § 605 by exhibiting the Program at the Establishment without payment to or authorization from Plaintiff.

- Whether the unauthorized exhibition of the Program was willful and for the purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

- Whether Martinez is individually liable. *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.,* 11 F. Supp. 3d 747, 753-54 (S.D. Tex. 2014).

- Whether $60,000.00 is appropriate statutory damages for the violation of the FCA for the Program. 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii).

- Whether Plaintiff is entitled to an award of its attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

## E.  STATEMENT OF FACTS

10. Pursuant to Plaintiff's Complaint and the evidence presented, the following facts are established:

   a. Defendants are not minors or incompetent persons and are not in active military service making entry of default judgment against Defendants proper. *See* Plaintiff's Request for Clerk's Entry of Default against Defendants, Dkt. #10.

   b. LLC conducted business as Barra Brava 290 Sports & Grill and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Dkt. # 1 at ¶ 4 and Ex. A, App. Pgs. 4-14.

   c. On the date of the Program, Martinez was a member, manager, officer, and/or principal of the LLC with the right and ability to supervise the activities and a financial interest in the activities of the Establishment. *See* Dkt. # 1 at ¶¶ 5, 15 and Ex. A, App. Pgs. 4-10.

   d. On the date of the Program, the Establishment was a business located at 825 Austin St., Suite 813, Hempstead, Texas, was open to the public for business, charged a cover charge to enter the Establishment to view the Program, and sold drinks and/or food. *See* Dkt. # 1 at ¶¶ 4, 12-13, Ex. A, App. Pgs. 4-14, Ex. B at ¶ 9, App. Pgs. 17-18, and Ex. B(3), App. Pgs. 24-28, Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

e.  Plaintiff is in the business of marketing and sublicensing commercial exhibitions of pay-per-view prizefight events. *See* Dkt. # 1 at ¶¶ 3, 6 and Ex. B at ¶¶ 4-5, App. Pg. 16.

f.  By agreement, Plaintiff was licensed to exhibit the Program at commercial locations such as bars, restaurants, clubhouses, shops, and other commercial establishments throughout the State of Texas. *See* Dkt. # 1 at ¶¶ 3, 6-8, Ex. B at ¶¶ 4-6, App. Pgs. 16-17, and Ex. B(1), App. Pg. 22.

g.  In Texas, the Program was legally available to commercial establishments such as the Establishment through an agreement with Plaintiff. *Id.*

h.  To safeguard against the unauthorized interception and/or receipt of the Program, the interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public. Upon receipt of the proper commercial sublicensing fee by Plaintiff from a commercial establishment for the Program, Plaintiff would authorize the receipt of the Program over the air, by cable, or both. *See* Dkt. # 1 at ¶¶ 6-7 and Ex. B at ¶¶ 11-13, App. Pgs. 18-19.

i.  Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons. *See* Dkt. # 1 at ¶ 14 and Ex. B at ¶ 13, App. Pg. 19.

j.  Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Program. The sublicense fee is based on the occupancy/capacity of the establishment. According to the affidavit of Laura Kloss, the Establishment had an approximate capacity of 150 people. For an establishment with an occupancy/capacity of 150 people, the commercial sublicense fee for a legal broadcast would have been $3,150.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Dkt. # 1 at ¶ 9, Ex. B at ¶ 8, App. Pg. 17, Ex. B(2), App. Pg. 23, and Ex. B(3), App. Pg. 24.

k.  On the date of the Program, Laura Kloss, after paying a $20.00 cover charge, entered the Establishment and observed the Program being broadcast at the Establishment counting 13 televisions and 120 people there at that time. *See* Ex. B at ¶ 9, App. Pgs. 17-18 and Ex. B(3), App. Pgs. 24-28.

l.  Joseph P. Hand, III (*also known as* Joe Hand Jr.), Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the Hempstead, Texas area. Accordingly, Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Ex. B at ¶¶ 10-14, App. Pgs. 18-19, Ex. B(3), App. Pgs. 24-28, Ex. C at ¶ 4, App. Pg. 30, and Ex. C(2), App. Pg. 35 limiting use of DAZN material to non-commercial, private viewing purposes only.

 m. The broadcast of the Program at the Establishment including the $20.00 cover charge was advertised on social media. *See* Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

### F. ARGUMENTS & AUTHORITIES

11. Plaintiff pled piracy claims under the FCA. The FCA protects against the piracy of radio and television signals. *See* 47 U.S.C. §§ 553 and 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the FCA.

12. Plaintiff seeks damages under the FCA, 47 U.S.C. § 605. 47 U.S.C. § 605 provides:

> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

13. "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) (reviewing the legislative history of § 605(e)(4)).

14. By default, Plaintiff's well pled allegations are deemed admitted. *See* Dkt. #1.

15. By this Motion, Plaintiff seeks the entry of a final default judgment against Defendants, jointly and severally, for $60,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

1. **THE FCA**

16. "The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773, 2012 WL 950157 * 2 (S.D. Tex. March 19, 2012) (Memorandum and Order) (Atlas, J.) (referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

17. On the date of the Program, the LLC conducted business as Barra Brava 290 Sports & Grill and owned, operated, maintained, and controlled the Establishment; on the date of the Program, Martinez was a member, manager, officer, and/or principal of the entity operating the Establishment with a right and ability to supervise and a direct financial interest in the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive commercial distributor in the United States. *See* Dkt. #1 at ¶¶ 3-16, 18-20-23, Ex. A, App. Pgs. 4-14, Ex. B at ¶¶ 4-14, App. Pgs. 16-19, Ex. B(1), App. Pg. 22, Ex. B(2), App. Pg. 23, and Ex. B(3), App. Pgs. 24-28.

18. In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as engaging in illegal conduct to steal programming through internet streaming for residential/non-commercial use only. *See* Ex. B at ¶¶ 10-14, App. Pgs. 18-19, Ex. C at ¶ 4, App. Pg. No. 30, and Ex. C(2), App Pg. 35; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) ("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490

(S.D.N.Y. 1999) (when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *G&G Closed Circuit Events, LLC v. Marroko Live, LLC*, No. 4:20-cv-03184, 2023 WL 11983896, at *5-6 (Findings of Fact and Conclusions of Law) (S.D. Tex. January 30, 2023) (finding that an unauthorized broadcast of internet streaming transmissions violates 47 U.S.C. § 605) (citing *Joe Hand Promotions, Inc. v. Texas 411 Corporation*, No. 4:11-cv-02883, ECF No. 31 at 4, 8-9 (S.D. Tex. December 13, 2012); *J&J Sports Productions, Inc. v. Salinas*, No. 4:17-cv-02100, ECF No. 22 (S.D. Tex. December 4, 2018)).

19. Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted).

2. **INDIVIDUAL LIABILITY**

20. The well-established standard for vicarious liability is whether the individual had (1) "the right and ability to supervise the unauthorized activities of the establishment" and (2) "an obvious and direct financial interest in those activities." *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.,* 11 F. Supp. 3d 747, 753-54 (S.D. Tex. 2014).

21. "Because of the strict liability nature of the FCA, officers, directors, **members, and managers** are held individually liable for the [FCA] violations under the theory of vicarious liability." *G&G Closed Circuit Events, LLC v. Alamo Card House, LLC*, 2021 WL 5810558, at *5 (W.D. Tex. Dec. 7, 2021).

11

22. Martinez was an owner, manager, and principal of the Establishment on the date of the Program. *See* Dkt. #1 at ¶¶ 5, 15, and Ex. A, App. Pgs. 4-10. Accordingly, Martinez had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

### 3.   STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)

23. As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990). It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. *Id.*

24. Pursuant to the FCA, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants, jointly and severally, in the amount of $10,000.00.

25. Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

26. Defendants, themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the live telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendants'

Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Dkt. #1 at ¶¶ 3-16, 18-20, 23, Ex. A, App. Pgs. 4-14, Ex. B at ¶¶ 4-14, App. Pgs. 16-19, Ex. B(1), App. Pg. 22, Ex. B(2), App. Pg. 23, and Ex. B(3), App. Pgs. 24-28. The willfulness of Defendants' violation is also shown by advertising the Program on social media, charging a cover charge, selling drinks and/or food during the broadcast of the Program, and exhibiting the Program on approximately 13 televisions. *See* Ex. A, App. Pgs. 4-14, Ex. B at ¶ 9, App. Pgs. 17-18, Ex. B(3), App. Pgs. 24-28, Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

27. As more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

28. Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (the "Copyright Act") is analogous to the FCA, its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled.

29. According to the Supreme Court, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *See Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and

unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id*.

30. Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts. *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.") (citations omitted). Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind" and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991). For an establishment with a capacity of 150 people, the sublicense fee would have been $3,150.00. *See* Ex. B at ¶ 8, App. Pg. 17, Ex. B(2), App. Pg. 23, and Ex. B(3), App. Pg. 24.

31. Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants' Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466

14

(M.D.Fla. 1986).

32. Types of damages suffered by Plaintiff and factors related to same include the following:

a. Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

b. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, our company and the authorized commercial establishments suffer additional losses.

c. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments such as Defendant's Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Ex. B at ¶¶ 5, 15-17, App. Pgs. 16, 19-20.

33. Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated program at Defendants' Establishment would have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's business opportunities. *See* Ex. B at ¶¶ 5, 15-17, App. Pgs. 16, 19-20; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

34. The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Ex. B at ¶¶ 5, 15-17, App. Pgs. 16, 19-20. If such programming is made available to the public for no fee at unauthorized commercial establishments, which have not purchased the right to broadcast such programming, commercial

establishments will find no reason to purchase the right to legally broadcast this type of programming. *Id.*

35.  Given the benefits which Defendants received from the broadcast of the Program (the revenue from the cover charge and the sales during the Program and establishing goodwill by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants, jointly and severally, and award to Plaintiff statutory damages in the amount of $10,000.00.

### 4.   DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

36.  Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as a "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

37.  Defendants specifically and willfully acted to illegally intercept the transmission of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program.  *See* Ex. B at ¶¶ 10-14, App. Pgs. 18-19, Ex. C at ¶ 4, App. Pg. 30, and Ex. C(3), App. Pg. 35; *Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Fox, Mag. J.) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate

cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.") (emphasis added).

38. Defendants knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.") (emphasis added).

39. The broadcast of the Program at the Establishment was willful and for the purpose and intent to secure a private financial gain and direct commercial advantage shown as follows:

    a.    **Cover Charge:** The Establishment charged a cover charge to enter the Establishment to view the Program. *See* Dkt. #1 at ¶ 12, Ex. B at ¶ 9, App. Pgs. 17-18, Ex. B(3), App. Pg. 24, Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

    b.    **Sales:** The Establishment sold drinks and/or food on the date of the Program. *See* Dkt. #1 at ¶ 12, Ex. A, App. Pgs. 4-14, Ex. B at ¶ 9, App. Pgs. 17-18, and Ex. B(3) (noting Laura Kloss ordered a soda and the videos showing patrons with beverages), App. Pgs. 24-28.

    c.    **Multiple televisions**: The broadcast of the Program at the Establishment was exhibited on approximately 13 televisions. *See* Ex. B at ¶ 9, App. Pgs. 17-18, and Ex. B(3), App. Pgs. 24-28.

17

      d.      **Advertisement:**  The broadcast of the Program at the Establishment was advertised on social media to draw patrons to the Establishment to spend money. *See* Ex. C at ¶ 3, App. Pgs. 29-30, and Ex. C(1), App. Pg. 31.

40. Clearly, Defendants' violation was willful and for a commercial advantage warranting additional damages.

41. Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize for willful acts. *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 777 (S.D. Tex. 2002) (the court awarded three times statutory damages for willful violations). Given the above, the amount of $50,000.00 (or five times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff. *See* 47 U.S.C. § 605(e)(3)(C)(ii).

### G.  ATTORNEY'S FEES AND COSTS

42. Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii). Under Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory. According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

43. Plaintiff seeks an attorney's fees award for the prosecution of this action through the default judgment requested. *See* Ex. D, App. Pgs. 62-66. In addition, Plaintiff seeks an award of costs, which costs have been proven by declaration with the attached invoices and receipt. *See* Ex. D at ¶ 7, App. Pg. 65, and Ex. D(1), App. Pgs. 67-68.

## H.  CONCLUSION

44.   As shown, Defendants, willfully and for purposes of direct or indirect commercial advantage or private financial gain, illegally intercepted and/or received the broadcast of the Program, and exhibited the Program in their commercial Establishment without authorization from or payment to Plaintiff. Accordingly, pursuant to the FCA and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## I.  PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court sign and cause to be entered a default judgment in favor of Plaintiff and against Defendants awarding Plaintiff,

(1) Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000.00; and

(3) Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Declaration for Attorney's Fees and Costs (for prosecution of this case through the default judgment); and

(4) Costs from Defendants, jointly and severally, in the amount of $555.00; and

(5) Post-judgment interest at the highest lawful rate; and

(6) Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
SDTX No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of November, 2025, a true and correct copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

| | |
|---|---|
| Barra Brava 290 Sports & Grill LLC<br>c/o Alex Martinez<br>825 Austin St., Suite 813<br>Hempstead, Texas 77445 | Alex R. Martinez<br>825 Austin St., Suite 813<br>Hempstead, Texas 77445 |

*/s/ Jamie King*         11/6/2025
Jamie King                Date