UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> BARRA BRAVA 290 SPORTS & GRILL LLC, *et al.,* <br><br> Defendants. | CASE NO.: 4:25-cv-03756 |

**DECLARATION OF JOSEPH P. HAND, III**

I, JOSEPH P. HAND, III, declare as follows:

1.  My name is Joseph P. Hand, III, *also known as* Joe Hand Jr. I am the President of Plaintiff, Joe Hand Promotions, Inc. and have been for over 20 years and, as such, I am familiar with the facts, circumstances, and proceedings of the instant matter. I am over the age of 18 years and competent to make this declaration. As President of Plaintiff, Joe Hand Promotions, Inc. at all material times in this case, facts in this declaration are within my personal knowledge and are true and correct.

2.  As President of Plaintiff, Joe Hand Promotions, Inc. ("JHP"), I am the custodian of records of JHP. Exhibits B(1) and B(2) attached to this declaration are business records of JHP. The above referenced exhibits were kept in the course of regularly conducted activity of JHP, and it was the regular practice of that activity for an employee or representative of JHP, with knowledge of the act, event, condition, opinion, or diagnosis recorded, to make the records or transmit information thereof to be included in such records; and such records were made at or near the time or reasonably soon thereafter. The above referenced exhibits are the originals or duplicates

of the originals.

3.      I make this declaration in support of JHP's request to recover statutory damages, including attorney's fees, costs, and interest in the above styled case.

4.      Our company, JHP, is a commercial licensor of sports and entertainment programming. DAZN Limited granted to JHP a license as the sole and exclusive commercial/non-residential distributor in the United States of America to distribute and authorize the exhibition of the pay-per-view broadcast of the *Canelo Alvarez vs. Gennady "GGG" Golovkin III* boxing match, including all undercard bouts and commentary, telecast on September 17, 2022 ("Program") for businesses such as the business made the basis of this case. JHP held the exclusive license to distribute and authorize the commercial exhibition of the Program in the State of Texas for exhibition in establishments such as the one that is the subject of this case. Our company thereafter marketed the sublicensing (commercial exhibition) rights for the Program to our company's commercial customers (i.e., bars, restaurants, clubhouses, shops, and similar locations). The sale of our company's commercial distribution rights to programming such as the Program is the crux of our business and critical to its continued viability. A true and correct copy of the September 16, 2022 letter from DAZN Limited for the Program is attached as Exhibit B(1).

5.      JHP began to experience serious erosion in the sales of our own proprietary programming to our commercial customers throughout the United States of America. To protect ourselves, we endeavored to find out the basis for the erosion and determined from our customers that the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed establishments (signal pirates).

2

6. In response, we embarked upon a nationwide program to police our signals for the purpose of identifying and prosecuting commercial establishments which pirate our programming (including the Program involved in this case).

7. Specifically, auditors were retained, at considerable expense, to detect and identify signal pirates. To ensure that only illegal locations were visited by the auditors, our company compiled its confidential list of customers (authorized and legal locations) who paid the required sublicense fee to broadcast the Program, and this list was distributed to participating auditing agencies in strict confidence.

8. Domestic commercial establishments, which contract with JHP, were required to pay our company a commercial sublicense fee to broadcast the Program. This sublicense fee for the Program was based on the occupancy/capacity of the establishment. For example, for the Program, if a commercial establishment had an occupancy/capacity of 150 people, the commercial sublicense fee for the Program would have been $3,150.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. A true and correct copy of the Rate Card for the Program is attached as Exhibit B(2).

9. The Program contained televised undercard bouts and color commentary, along with the main event prizefight. As set forth in her affidavit, Laura Kloss, an eye witness, after paying a $20.00 cover charge, entered the commercial establishment known as Barra Brava 290 Sports & Grill located at 825 Austin St., Suite 813, Hempstead, Texas on September 17, 2022 and observed the Program being broadcast on multiple televisions and counting approximately 120 people in the commercial establishment at that time. At no time did this commercial establishment ever lawfully license the Program from our company for such a purpose. This commercial establishment was not authorized by JHP nor did it pay to JHP the proper commercial sublicense

fee to exhibit the Program. A true and correct copy of the Piracy Affidavit of Laura Kloss along with photographs and videos is attached as Exhibit B(3).

10. I have had an opportunity to review the videos provided by Laura Kloss. The videos show the exhibition of the September 17, 2022 broadcast of the Program. On the televisions showing the Program, I recognized the DAZN logo in the upper corner of the television screens, known to me to the logo for a broadcast from the DAZN internet television application. The DAZN logo I observed on the television screens originates from the internet streaming of the Program from DAZN. I understand that the Program was available from the DAZN internet television application on the date of the Program only for non-commercial, private viewing purposes. JHP held the exclusive rights to distribute and authorize the display of the Program in businesses such as the business in this lawsuit.

11. The Program broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite television companies via a satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the undercard bouts and the main prizefight of the Program.

12. Upon receipt of the proper commercial sublicensing fee by JHP from a commercial establishment for the Program, JHP would authorize the receipt of the Program over the air, by cable, or both.

13. JHP did not authorize the commercial business known as Barra Brava 290 Sports & Grill located at 825 Austin St., Suite 813, Hempstead, Texas 77445 (the "Establishment") to receive and exhibit the Program.

14. I believe that our programming was *not* and *cannot* be mistakenly, innocently, or accidentally intercepted in the Hempstead, Texas area. For the past several years, commercial locations would employ residential cable and satellite equipment to circumvent commercial licensing requirements and pirate our programming. More recently, signal pirates have engaged in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only.

15. It is respectfully submitted that the unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of television broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

16. Although difficult to quantify, types of damages suffered by our company and our customers include the following:

   a. Our company loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments which steal sports and other closed-circuit programming.

   b. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, our company and the authorized commercial establishments suffer additional losses.

  c. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments adversely affects both JHP and its customers. JHP pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. JHP's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

  17. We, at JHP, believe that the persistent signal piracy of our programming costs our company, our customers, and their communities millions of dollars annually resulting, in part, from the perceived lack of consequences. For these reasons, I ask this court to grant a substantial allowance for statutory damages.

  18. Clearly, this Establishment had no justification to steal our programming and exhibit it for its own financial benefit, except to deny our company the commercial sublicense fees to which JHP was rightfully entitled.

  I declare under penalty of perjury that the foregoing is true and correct.

  EXECUTED this  3   day of November, 2025 at Feasterville, Pennsylvania.

*Joseph P. Hand, III*
Joseph P. Hand, III (Nov 3, 2025 17:45:15 EST)

Joseph P. Hand, III,
*also known as* Joe Hand, Jr.
*President of Plaintiff, Joe Hand Promotions, Inc. (JHP)*

# Canelo-GGG 3 - Joe Hand Declaration_Barra Brava

Final Audit Report                                                                 2025-11-03

| | |
|---|---|
| Created: | 2025-11-03 |
| By: | Jekielek & Janis (settlement@jj-lawyers.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAM_UIRzKDgu4UO1EI6SEbZYET7b8RmzEd |

## "Canelo-GGG 3 - Joe Hand Declaration_Barra Brava" History

- Document created by Jekielek & Janis (settlement@jj-lawyers.com)
  2025-11-03 - 2:41:56 PM GMT

- Document emailed to Joseph P. Hand, III (joejr@joehandpromotions.com) for signature
  2025-11-03 - 2:42:00 PM GMT

- Email viewed by Joseph P. Hand, III (joejr@joehandpromotions.com)
  2025-11-03 - 10:44:49 PM GMT

- Document e-signed by Joseph P. Hand, III (joejr@joehandpromotions.com)
  Signature Date: 2025-11-03 - 10:45:15 PM GMT - Time Source: server

- Agreement completed.
  2025-11-03 - 10:45:15 PM GMT

Adobe Acrobat Sign