United States District Court
Southern District of Texas
**ENTERED**
May 19, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-3756 |
| | § | |
| BARRA BRAVA 290 SPORTS & GRILL LLC | § | |
| and ALEX R. MARTINEZ, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s ("Plaintiff" or "JHP") Motion for Default Judgment. (Doc. No. 15). Defendants have not responded or otherwise appeared in this action. For the following reasons, Plaintiff's motion is **GRANTED**.

### I.    BACKGROUND

Plaintiff is a licensor of sports and entertainment programming to commercial establishments, and it had the exclusive right to distribute and authorize the display of the September 17, 2022 boxing match between Canelo Alverez and Gennady "GGG" Golovkin III (the "Program"). (Hand Decl., Doc. No. 15-4 at 2). Defendants are Barra Brava 290 Sports & Grill LLC, which does business as Barra Brava 290 Sports & Grill ("Barra Brava"), and its owner and operator, Alex R. Martinez. Plaintiff alleges Defendants unlawfully broadcast the Program at Barra Brava without Plaintiff's permission, consent, or a license.

On August 11, 2025, JHP filed the instant suit against Defendants, alleging violations of the Federal Communications Act of 1934. (Doc. No. 1). The Court issued summons as to both Defendants (Doc. No. 6), and Plaintiff filed a return of service representing that both Defendants were served on September 3, 2025. (Doc. Nos. 8, 9). Accordingly, Defendants' deadline to answer

was September 24, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A). Defendants did not answer or otherwise respond. After this deadline passed, Plaintiff requested an Entry of Default against both Defendants, (Doc. No. 10), which the Clerk entered on October 1, 2025. (Doc. No. 13). On November 6, 2025, Plaintiff filed the present Motion for Default Judgment. (Doc. No. 20).

## II.    ANALYSIS

When considering whether to enter default judgment, courts in the Fifth Circuit consider three elements: (1) whether the entry of a default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) what form of relief, if any, the plaintiff should receive. *Nasufi v. King Cable Inc.*, No. 3:15-CV-3273-B, 2017 WL 6497762, at *1–2 (N.D. Tex. Dec. 19, 2017) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

### A.  Default Judgment is Procedurally Warranted.

First, default judgment is procedurally warranted here. As already stated, Defendants were properly served but did not answer or otherwise respond by the deadline required under the Federal Rules, so the Court granted Plaintiff's request for Entry of Default and the Clerk entered said default. *See* (Doc. Nos. 8, 9, 10, 13). As a result, no material facts are in dispute. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

### B.  There is Sufficient Basis for Judgment in the Pleadings.

Second, the pleadings provide a sufficient basis for entering default judgment. JHP alleges a violation of 47 U.S.C. § 605.[1] Section 605 of the Federal Communications Act governs the "unauthorized publication or use of communications." 47 U.S.C. § 605(a). "An individual violates

---

[1] In its Complaint, Plaintiff asserted piracy claims under the FCA, 47 U.S.C. § 605 or, alternatively, 47 U.S.C. § 553. In this Motion, Plaintiff moves for default judgment solely under Title 47 U.S.C. § 605. (Doc. No. 15 at 4).

section 605 by displaying an intercepted communication." *J & J Sports Prods., Inc. v. Lopez*, No. CIV. A. H-10-1504, 2011 WL 175875, at *1 (S.D. Tex. Jan. 18, 2011).

The pleadings establish both that Plaintiff was the sole distributor authorized to display the Program and that Defendants did not pay the necessary fee to display the Program. The record includes a copy of a letter from DAZN Limited to Plaintiff, confirming that Plaintiff was the sole and exclusive commercial distributor for the live pay-per-view broadcast of Canelo Alvarez v. Gennady "GGG" Golovkin 3 on Saturday, September 17, 2022. (Doc. No. 15-5). As a result, only establishments that JHP contractually authorized could lawfully exhibit the September 17, 2022 broadcast in Texas. (Hand Decl., Doc. No. 15-4 at 2). If a commercial establishment was authorized by JHP to receive and broadcast the event, arrangements would be made to allow the establishment to receive the signal for the broadcast over the air, by cable, or both. (*Id.* at 4). Neither the Defendants nor any representative of the Defendants entered into a contract to obtain the rights to the broadcast or paid the necessary fee to display the Program. (*Id.* at 3–4).

On the date in question, Laura Kloss paid a $20.00 cover charge to enter Barra Brava where she witnessed thirteen televisions displaying the Program and around 120 people present at the establishment. (Kloss Aff., Doc. No. 15-7 at 1). Kloss further observed that Defendants' broadcast displayed the DAZN logo in the upper corner of the television screens, (*Id.*), indicating that Defendants were broadcasting the internet streaming of the Program by DAZN. (Hand Decl., Doc. No. 15-4 at 4). The Program was available to stream from DAZN that day but only for non-commercial private viewing purposes. (*Id.*; Janis Decl., Doc. No. 15-8 at 2). Defendants' broadcast at its establishment was not for a "non-commercial private purpose." (Janis Decl., Doc. No. 15-8 at 2). Rather than purchase the rights from Plaintiff to broadcast the Program, Defendants illegally intercepted and/or received and exhibited the Program at Barra Brava without authorization. (Hand

Decl., Doc. No. 15-4 at 4–5). As a result, Plaintiff has sufficiently established Defendant's liability for a violation of 47 U.S.C. § 605.

### C. Plaintiff's Requested Relief

While a defendant's default concedes the truth of a complaint's factual allegations, a plaintiff must still prove damages. *U.S. for the Use of M–Co Constr. v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages are normally not awarded without an evidentiary hearing. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). "That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* (citations omitted). Here, Plaintiff requests damages that are capable of mathematical calculation, so a hearing is unnecessary.

Under the Federal Communications Act, the aggrieved party may elect to receive actual damages or statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court may, in its discretion, award additional damages not more than $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage." *Id.* § 605(e)(3)(C)(ii). Costs and reasonable attorney's fees are mandatory. *Id.* § 605(e)(3)(B)(iii).

Plaintiff requests the $10,000.00 statutory maximum under subsection (C)(i)(II), $50,000.00 for the defendants' willful acts under subsection (C)(ii), $2,900.00 in attorney's fees for litigation efforts up to this point, $555.00[2] in costs, and post-judgment interest. (Doc. No. 15 at 12).

The record establishes that the Defendants advertised and displayed the boxing match, without authorization, establishing liability under § 605. JHP is entitled to recover statutory

---

[2] Costs include $405 in filing fees for the Complaint and $150 related to service of process. (King Decl., Doc. No. 15-11 at 4).

damages. Several factors present in this case favor granting the maximum statutory damages of $10,000.00, as requested. The record establishes that Defendants broadcast the event to approximately 120 people at Barra Brava on thirteen television screens, including at least one projector. (Kloss Aff., Doc. No. 15-7). The record also establishes that the Defendants advertised the match on the establishment's Facebook page prior to the match. (Doc. Nos. 15-8, 15-9). Factors such as the difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to Plaintiff, and the need for an award sufficient to deter future piracy by Defendants and others, weigh in favor of granting maximum statutory damages.  Plaintiff has shown the basis for an award of $10,000.00 in statutory damages under § 605(e)(3)(C)(i)(II).

JHP also seeks an award of additional damages. Section 605 states that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). The record shows that Defendants showed the boxing match on thirteen screens, to approximately 120 patrons. The boxing match was shown for the purpose of increasing the business, customers, and sales revenue, as demonstrated by Defendants' imposition of a $20.00 cover charge and offering drinks and food for sale during the boxing match's screening. *See* (Kloss Aff., Doc. No. 15-7; Doc. No. 15-9). The Defendants also advertised the match at least once on its public Facebook page. Based on the undisputed evidence, this court finds a willful violation and awards $4,800.00 additional damages beyond the $10,000.00. *See J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *2 (S.D. Tex. Jan. 11, 2018) (Garcia Marmolejo, J.) (finding defendant's showing of boxing match on multiple big-screen televisions and charging a $20 cover charge warranted $50,000 in additional damages for a willful violation); *Joe Hand*

*Promotions, Inc. v. USA Daily Exp., Inc.*, No. CIV.A. H-11-2490, 2012 WL 92549, at *2 (S.D. Tex. Jan. 11, 2012) (Rosenthal, J.) (finding defendant's willful showing of boxing match on 12 televisions to 112 patrons warranted $25,000 beyond the $10,000 statutory damages award).

As the prevailing party, the Plaintiff is entitled to an award of its costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Whether an hourly rate is reasonably depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). In a sworn affidavit, counsel for JHP asserts that he worked 11.60 hours at an hourly rate of $250.00. (King Decl., Doc. No. 15-11). The Court finds that this rate is reasonable. The total amount for attorney's fees incurred by Plaintiff is 2,900.00.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (Doc. No. ) is hereby

**GRANTED**. A separate Judgment in favor of Plaintiff will be entered in the following amounts:

1. $10,000 in statutory damages;

2. $4,800 in enhanced damages;

3. $2,900 in reasonable attorney's fees;

4. $555.00 in court costs; and

4. Post-judgment interest on the above at a rate of 3.80% per annum. Final judgment will

be entered by separate order.

It is so ordered.

Signed on this the 15th day of May, 2026.

Andrew S. Hanen
United States District Judge